United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES L. WILLIAMS, ) | No. C 04-2086 MMC (PR) |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANTS'** |
| ) | **MOTIONS FOR SUMMARY** |
| v. ) | **JUDGMENT; DIRECTING PLAINTIFF** |
| ) | **TO EFFECTUATE SERVICE UPON OR** |
| MARTHA CAMPOS, M.D., ) | **PROVIDE COURT WITH LOCATION** |
| HORACIO CAMPOS, M.D., J. ) | **INFORMATION FOR UNSERVED** |
| PENDLETON, M.D., ) | **DEFENDANT** |
| M. INOCENCIO, R.N., ) | |
| ) | |
| Defendants. ) | **(Docket No. 36)** |
| _____ ) | |

On May 26, 2004, plaintiff Charles Williams, a California prisoner currently incarcerated in San Quentin State Prison ("SQSP"), filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights while he was housed at the Santa Rita County Jail ("Santa Rita"). Plaintiff twice amended his complaint. On October 19, 2004, after reviewing the Second Amended Complaint[1], the Court found plaintiff had stated cognizable claims against defendants M. Inocencio, R.N. ("Inocencio"), Horacio Campos, M.D. ("Dr. Horacio Campos"), Martha Campos, M.D. ("Dr. Martha Campos") and J. Pendleton, M.D. ("Dr. Pendleton"), all Santa Rita employees.

---

[1] For the sake of simplicity, the Second Amended Complaint, filed March 7, 2005, will be referred to herein as the "complaint," unless otherwise noted.

Inocencio, Dr. Horacio Campos, and Dr. Martha Campos (hereinafter "defendants") have filed a joint motion for summary judgment.[2] Plaintiff has opposed this motion, and defendants have filed a reply.

### BACKGROUND[3]

In March 2000, during a previous incarceration at Santa Rita, plaintiff was diagnosed, by Dr. Brett Curtis ("Dr. Curtis"),[4] with an inguinal hernia. (Defs.' Ex. B.) Plaintiff was released from Santa Rita on April 27, 2000; he was returned to Santa Rita on August 22, 2002. (Defs.' Exs. C, D.) The following day, August 23, 2002, he was examined by Inocencio, who confirmed plaintiff had a hernia and noted he was in no acute distress. (Defs.' Ex. E.) Inocencio conferred with Dr. Curtis who ordered a "suspensory jockstrap" to relieve plaintiff's discomfort. (Defs.' Exs. E, F.) On June 11, 2003, plaintiff, complaining of pain, returned to the infirmary, at which time he was again examined by Inocencio, as well as by Dr. Pendleton. (Defs.' Exs. E, G.) Plaintiff requested, and Dr. Pendleton ordered, a new suspensory jockstrap; Dr. Pendleton denied plaintiff's request for surgery, noting plaintiff was in no acute distress[5] and that his hernia exhibited "minimal tenderness." (Defs.' Ex. G.)

On December 16, 2003, plaintiff again returned to the infirmary, complaining of worsening pain from his hernia. (Defs.' Ex. G.) He was seen by Inocencio and Dr. Martha Campos, at which time Inocencio noted plaintiff was not wearing his suspensory jock strap and Dr. Martha Campos ordered a new one. (Defs.' Exs. F, G; Declaration of Dr. Horacio Campos (hereinafter "Campos Decl.") ¶ 12.) She also prescribed Colace for constipation, to alleviate any discomfort from straining; she denied plaintiff's request for surgery. (Id.)

---

[2] To date, Dr. Pendleton has not been served. The United States Marshal ("Marshal") attempted service on Dr. Pendleton at Santa Rita, where plaintiff indicated Dr. Pendleton had treated him, but returned the summons unexecuted because Dr. Pendleton was not employed or otherwise located there.

[3] The following facts are undisputed and are derived from the parties' exhibits.

[4] Dr. Curtis is not named as a defendant to the instant action.

[5] Both Inocencio and Dr. Pendleton used the standard abbreviation "NAD."

1   On January 9, 2004,[6] plaintiff returned to the infirmary, again asking for surgery and complaining of "unbearable" pain. (Pl.'s Ex. F.) Dr. Martha Campos examined plaintiff but found no signs or symptoms warranting immediate surgery. (Defs.' Ex. J.) She prescribed pain medication (400 mg. of Motrin), and referred him to the surgery clinic for evaluation of the hernia. (Defs.' Exs. J, N.) On February 3, 2004, Dr. Horacio Campos examined plaintiff in the surgery clinic. (Campos Decl. ¶ 12.) He found no need for immediate surgery, prescribed pain medication (Percogesic), and ordered plaintiff to return in two weeks for another surgical evaluation. (Defs.' Exs. K, N; Campos Decl. ¶ 12.) Plaintiff was transferred to SQSP on February 13, 2004, before the two weeks had elapsed.

On February 18, 2004, plaintiff was examined by an SQSP doctor who ordered a surgical consultation "ASAP." (Pl.'s Ex. H.) On February 26, 2004, plaintiff was examined by a surgeon, who recommended surgery for the hernia. (Id.) The surgery was performed at a hospital outside SQSP on April 30, 2004. (Pl.'s Ex. G.)

## DISCUSSION

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

---

[6] In his complaint, plaintiff alleges he also was seen by Inocencio on January 6, 2004. The medical records, however, indicate that on that date he was seen by Nurse Carla Peguese for a complaint of a cold and headache, and not for any symptoms related to his hernia. (Defs.' Exs. I, J.) Plaintiff does not dispute this point in his opposition.

3

facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Legal Claims

Plaintiff claims that defendants were deliberately indifferent to his medical needs by failing to order surgery for his hernia while he was at Santa Rita. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle v. Gamble, 429 U.S. at 104). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic and substantial pain. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060.

### 1. Defendants Inocencio, Dr. Horatio Campos, Dr. Martha Campos

With respect to Inocencio, plaintiff has failed to raise a genuine issue of material fact as to whether any failure to provide surgery at Santa Rita was attributable to such defendant. Liability may be imposed on an individual defendant under § 1983 only if the plaintiff can show that such defendant proximately caused the alleged deprivation of the federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). In that regard, defendants herein present the declaration of Dr. Horatio Campos, in which he states, "As a nurse, Ms. Inocencio did not have the authority to order" a surgical referral or medication for plaintiff. (Campos Decl. ¶ 13.) Plaintiff provides no evidence contradicting this statement. Instead, plaintiff cites to plaintiff's deposition, in which plaintiff testified Inocencio exhibited

1 "scorn" by stating, "You should have taken care of your problem on the street, and you're not
2 going to the hospital." (Defs.' Exs. A at 36-37.) Such remark, however, even if made, does
3 not demonstrate Inocencio had the ability or authority to refer plaintiff for surgery.

4 Plaintiff next asserts that he told Inocencio he was in "unbearable" and "great" pain,
5 and argues this information "should've been enough to warrant the appropriate remedy to
6 abate plaintiff's suffering." (Opp. at 8.) Even if there were evidence that Inocencio was
7 aware of such complaint,[7] however, there is no evidence of deliberate indifference, i.e., there
8 is no evidence she had any ability to refer plaintiff for surgery. The record demonstrates that
9 each of the three times she saw plaintiff, including the occasions upon which he complained
10 of pain from his hernia, Inocencio either consulted a medical doctor or there was a doctor
11 present. In particular, in August 2002, she consulted Dr. Curtis; in June 2003 and December
12 2003, respectively, Drs. Pendleton and Martha Campos were present. There is no evidence
13 that Inocencio, as a nurse, had any reason to question, much less any authority to override,
14 the treatment ordered by those medical doctors, which treatment did not include surgery. In
15 the absence of such evidence, plaintiff has failed to raise a genuine issue of material fact as to
16 whether Inocencio had any effect on the timing of plaintiff's surgery or in any other respect
17 was deliberately indifferent to his medical needs.

18 With respect to Dr. Martha Campos and Dr. Hector Campos, plaintiff has failed to
19 present evidence of anything more than a difference of opinion between himself and those
20 defendants as to whether surgery was medically necessary during the time he was at Santa
21 Rita. "A difference of opinion between a prisoner-patient and prison medical authorities
22 regarding treatment does not give rise to a § 1983 claim." See Franklin v. Oregon, 662 F.2d

---

[7] The evidence presented is that on June 11, 2003, plaintiff told Inocencio he had "tight pains," (Defs.' Ex. E); on December 16, 2003 he told her he felt "burning and pain" (Defs.' Ex. G), and on January 9, 2004, he told *Dr. Martha Campos* the pain was "unbearable" (Pl.'s Ex. J). There is no evidence plaintiff ever described his pain to *Inocencio* either as "unbearable" or "great." Plaintiff's allegations to this effect in his complaint and opposition do not constitute evidence because neither the complaint nor the opposition is verified. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (allowing verified complaint to function as opposing affidavit under Rule 56 if it is based on personal knowledge and sets forth specific facts admissible in evidence); Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir. 1998) (same, with respect to allegations in verified motion).

6

1337, 1344 (9th Cir. 1981); see also Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004). Here, plaintiff challenges the following decisions regarding surgery: Dr. Martha Campos's December 16, 2003 decision that plaintiff did not need surgery; Dr. Martha Campos's January 9, 2004 decision to refer him to the surgical clinic for a consultation instead of ordering immediate emergency surgery; and Dr. Horacio Campos's February 3, 2004 decision that plaintiff did not need surgery immediately.[8] In that regard, defendants have submitted the following medical opinion of Dr. Horacio Campos:

> 14.  I am further informed and believe that Mr. Williams claims Dr. Martha Campos was deliberately indifferent to his medical needs by not immediately referring him for surgery on December 16, 2003, and January 6, 2004.[9] Mr. Williams had no need for immediate surgery on either of those occasions. He had a stable inguinal hernia. Unlike some other hernias, this variety of hernia generally is at very low risk for strangulation. They may cause no symptoms, and remain the same size for long periods, so that they may not need surgery. Dr. Martha Campos thus met the standard of care on December 16, by ordering a new suspensory jockstrap and Colace to alleviate generalized and bowel movement-related discomfort. She also met the standard of care on January 9, by determining no need for emergency surgery existed, by ordering Motrin for any hernia-related discomfort, and by referring Mr. Williams to the surgical clinic for further evaluation.
> 15.  Because Mr. Williams had no need for emergency surgery as of February 2004, my decision not to arrange for surgery on an emergent basis likewise was medically appropriate. San Quentin physicians implicitly confirmed this by not performing surgery for nearly 3 months after the last time I saw him.

(Campos Decl. ¶¶ 14-15.) Plaintiff offers no evidence to dispute the above evidence that his hernia, at the time Drs. Horacio and Martha Campos examined him, was "stable," and "at very low risk for strangulation," nor does he offer any evidence that the treatment provided by either such doctor failed to meet the applicable standard of care or was not medically appropriate.

In an effort to create a triable issue of fact as to deliberate indifference, plaintiff points

---

[8]Plaintiff also contends Dr. Horacio Campos was present when Inocencio examined him in August 2002, relying on a stamp of Dr. Horacio Campos's name at the bottom of a page of physician's orders that includes the entry for the August 2002 examination. (Defs.' Ex. F.) Dr. Horacio Campos states he was not working at Santa Rita at that time. (Campos Decl. at ¶ 2.) This dispute is immaterial, however, because plaintiff does not contend, nor is there any evidence showing, he requested or required surgery on that occasion.

[9]The medical records indicate that on January 6, 2004, plaintiff was seen only by Nurse Peguese, and not by Dr. Martha Campos. (Defs.' Ex. J.)

7

to evidence showing that on February 18, 2004, shortly after his arrival at SQSP, he was referred for a surgery consultation "ASAP"; that he actually received the surgery on April 30, 2004; and that he was in "unbearable" pain while at Santa Rita. The fact that Dr. Christensen, the SQSP doctor who examined plaintiff on February 18, 2004, recommended a surgery *consultation* "ASAP" is not evidence that decisions not to order immediate *surgery*, made, respectively, 15 days earlier, over a month earlier, and almost two months earlier, were medically unacceptable. To begin with, Dr. Christensen's recommendation for a surgery consultation is consistent with Dr. Martha Campos's earlier referral for a surgery consultation in January 2004, as well as with Dr. Horacio Campos's February 3, 2004 order that plaintiff return to the clinic for another consultation in two weeks. Indeed, an examination of the form completed by Dr. Christensen reveals that while he wrote "ASAP," he did not circle the term "emergent," provided on the form to designate an emergency. (Pl.'s Ex. H.) In addition, the SQSP surgeon who recommended surgery twelve days later, on February 26, 2004, made no notation of an emergency or urgent need for surgery, (id.), and the SQSP doctors in fact did not perform surgery until April 30, 2004, over one month thereafter. If anything, such evidence supports the decisions by Drs. Horacio and Martha Campos that plaintiff did not need surgery immediately or on an emergency basis.

With respect to the assertedly "unbearable" pain experienced by plaintiff, the only evidence of any defendant being apprised thereof is plaintiff's use of that word in his January 9, 2004 request for medical treatment, which request was given to Dr. Martha Campos. Dr. Horacio Campos has opined that the pain related to plaintiff's condition would not be expected to rise to such level. (Campos Decl. ¶ 16.) Even assuming plaintiff in fact was in "unbearable" pain, however, there is no evidence the action taken by Dr. Martha Campos in January 2004, when she received plaintiff's request, was medically insufficient. As described above, Dr. Martha Campos prescribed medication for pain and referred plaintiff for a surgery consultation. Plaintiff was prescribed additional pain medication when examined by Dr. Horacio Campos several weeks later. In the absence of evidence such treatment was a medically unacceptable response to the pain plaintiff described, there is no

1 triable issue of fact as to whether defendants were deliberately indifferent to his serious
2 medical needs.

3   In his complaint, plaintiff makes several additional allegations in an effort to discredit
4 the decision not to provide surgery at Santa Rita. These allegations do not constitute
5 evidence because, as explained above, the complaint is not verified. See Schroeder, 55 F.3d
6 at 460 & nn.10-11. Nevertheless, even if verified, these allegations would not create a triable
7 issue of fact. Plaintiff alleges that "to this day I feel pain in my [groin] area." (Compl. at
8 4:15-16.) Plaintiff presents no evidence, however, that any such pain is attributable to a
9 delay in his surgery, or to any improper decision or conduct by defendants. Plaintiff further
10 alleges he was told by the doctor who performed the surgery: "'this surgery should have been
11 done by now, and your life is at risk without it'"; that his "incision would be a lot wider due
12 to the length of the delay of surgery"; and that the surgery "became more difficult due to the
13 delay." (Compl. at 4.) Such hearsay statements attributed to the surgeon would not constitute
14 admissible evidence even if contained in a verified complaint. By contrast, although not
15 required to do so, defendants have offered the following admissible evidence with respect to
16 the allegation that the delay caused a wider incision and more difficult surgery:

> I am further informed and believe that Mr. Williams is alleging the surgery he eventually had on April 30, 2004, was more complicated and resulted in greater scarring because he did not receive surgery when incarcerated at Santa Rita. This is untrue. The April 30 surgery only would have been more complicated if his hernia had become strangulated. As mentioned above, Mr. Williams' hernia was not one prone to strangulation, and I am informed and believe San Quentin physicians would not have waited so long to perform the surgery if Mr. Williams hernia had become strangulated. The scar necessitated by surgery likewise would not have been any different if Martha Campos or I had arranged for Mr. Willams to have surgery before he was transferred to San Quentin. The recovery period likewise would have been the same.

(Campos Decl. ¶ 17.)

25   In sum, plaintiff has failed to present evidence sufficient to create a genuine issue of
26 material fact as to whether any of the moving defendants was deliberately indifferent to his
27 medical needs in connection with the treatment he received at Santa Rita for his hernia.
28 Accordingly, defendants Inocencio, Dr. Horacio Campos and Dr. Martha Campos are entitled

1  to summary judgment.[10]

2     2.     Defendant Dr. Pendleton

3  As noted above, the Court ordered the Marshal to serve the complaint on Dr.
4  Pendleton, along with the other three defendants, at Santa Rita, where plaintiff alleged all
5  said defendants had treated him.  As further noted, the Marshal served the other three
6  defendants at Santa Rita, but returned the summons unexecuted as to Dr. Pendleton, for the
7  reason that he could not be located there.

8  In cases wherein the plaintiff proceeds in forma pauperis, the "officers of the court
9  shall issue and serve all process." 28 U.S.C. § 1915(d).  The court must appoint the Marshal
10 to effect service, see Fed. R. Civ. P. 4(c)(2), and the Marshal, upon order of the court, must
11 serve the summons and the complaint, see Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir.
12 1994).  Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely
13 on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate
14 such service."  Rather, "[a]t a minimum, a plaintiff should request service upon the
15 appropriate defendant and attempt to remedy any apparent defects of which [he] has
16 knowledge."  Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).

17 Here, plaintiff's complaint has been pending for over 120 days, and thus is subject to
18 dismissal without prejudice against the unserved defendant, absent a showing of "good
19 cause."  See Fed. R. Civ. P. 4(m).  Because plaintiff has not provided sufficient information
20 to allow the Marshal to locate and serve Dr. Pendleton, plaintiff must remedy the situation or
21 face dismissal.  See Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (holding
22 prisoner failed to show good cause why prison official should not be dismissed under Rule
23 4(m) where prisoner failed to show he had provided Marshal with sufficient information to
24 effectuate service).  Accordingly, plaintiff must either himself effect service on defendant Dr.
25 Pendleton, or provide the Court with an accurate current location such that the Marshal is
26 able to effect such service.  Plaintiff's failure to do so, as ordered below, will result in

27
28  [10]In light of this finding, the Court need not address defendants' alternative argument that the claims have not been exhausted.

10

dismissal of this matter pursuant to Rule 4(m).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment of defendants M. Inocencio, Horacio Campos, M.D. and Martha Campos, M.D. is hereby GRANTED.

<u>If plaintiff fails to effectuate service on defendant J. Pendleton, M.D. or provide the Court with an accurate current location for said defendant, within **thirty (30) days** of the date this order is filed, plaintiff's claims against said defendant will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.</u>

This order terminates Docket No. 36.

IT IS SO ORDERED.

DATED: September 27, 2006

_____
MAXINE M. CHESNEY
United States District Judge